IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01546-MEH

MATTHEW SCOT GOMEZ,

    Plaintiff,

v.

AMY NICKERSON, Caseworker with Arapahoe County's
Child and Adult Protection Services Division,
MIRANDA TUNER, Caseworker with Arapahoe County's
Child and Adult Protection Services Division,
ALLISON COLDWELL, Supervisor with Arapahoe County's
Child and Adult Protection Services Division,
MATTHEW FANTE, Caseworker with Arapahoe County's
Child and Adult Protection Services Division,
KATIE BROOKS, Caseworker with Arapahoe County's
Child and Adult Protection Services Division,
JORDAN LEWIS, Arapahoe County Prosecutor,
LINDA M. ARNOLD, Arapahoe County Prosecutor,
JUDGE BONNIE MCLEAN, and
NICK DEPETRO, Guardian ad Litem,

    Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is the Motion to Dismiss (ECF 12) filed by Defendant Nick DePetro. It is fully briefed. Plaintiff has filed several responses (ECF 16, 17, & 19) in opposition to it, and Defendant DePetro has filed his Reply (ECF 12). Also before the Court is the Motion for Default Judgment (ECF 18) filed by Plaintiff. The Court rules on it without awaiting further briefing, *see* D.C.COLO.LCivR 7.1(d). The Court finds that oral argument will not materially assist in either Motion's adjudication. For the reasons that follow, the Court respectfully recommends granting the Motion to Dismiss and denying the Motion for Default Judgment.

## **BACKGROUND**

This lawsuit concerns the removal of Plaintiff's infant son from the hospital at the time of birth and the later termination of Plaintiff's parental rights. Not only does Plaintiff challenge those actions on their merits, arguing that there was no legitimate basis for them, but he contends that his constitutional rights were violated in the process. He brings this civil action against the several individuals who carried out the physical removal and who otherwise participated in the child welfare proceeding and determination.

### I.     Alleged Facts

Plaintiff's son was removed from the hospital on November 9, 2018. The primary reason for the removal was an open child welfare investigation of the mother. ECF 1 at 26, 34.

On the same day as the removal, attorneys working for Arapahoe County, Colorado, commenced a dependency and neglect case, Case No. 18JV868, regarding Plaintiff and his son in Arapahoe County juvenile court. A trial took place on January 10, 2019. The case was closed on January 11, 2021 upon the termination of his paternal rights.

Plaintiff references a treatment plan which was "implemented by the courts and adopted by all parties." ECF 1 at 27. Plaintiff says any failure by him to comply with it cannot be held against him because the plan was invalid in the first place. *Id*. Plaintiff adds that Defendant DePetro had requested three psychologists to evaluate him, and contrary to the state court's determination, they all supported placing the child in his care. ECF 16.

### II.    Claims for Relief

Plaintiff objects to the physical removal of his son from the hospital without a written warrant or a demonstration of probable cause. Thereafter, the case workers did not investigate the matter properly. Instead, they fabricated a case against him.

Similar to his claims of wrongdoing against the other Defendants, Plaintiff accuses the court-appointed guardian ad litem, Defendant DePetro, of falling short of his professional, ethical, and legal obligations. He should have taken greater care given the important parent-child relationship at stake. Plaintiff says Defendant DePetro did not uphold his son's best interests and did not investigate the matter with due diligence. Instead, he "went out of his way to repeat[] . . . bias in his motions and arguments [to] the court to keep [Plaintiff's] son from being returned to [him]." ECF 16.

Plaintiff contends that Defendant Judge Bonnie McLean decided the case incorrectly. The circumstances did not warrant the child's removal from Plaintiff's care. It was the child's mother who was the focus of concern, and there was no issue about the other children who remain in Plaintiff's care. There was no need to place his son in foster care, and by doing so, the court interfered with his familial liberty interests. Plaintiff furthers that Judge McLean decided the case without affording him various forms of due process protection and decided the matter contrary to the governing law.

Plaintiff identifies no specific cause of action upon which he bases this civil lawsuit. However, underlying his grievances and accusations of wrongdoing by the various Defendants is Plaintiff's assertion of a constitutional right to be free from undue interference in his ability to raise his son.

## LEGAL STANDARDS

### I.     Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Dismissal under it is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and

"there is a presumption against our jurisdiction"). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A motion to dismiss under Rule 12(b) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). Plaintiff bears the burden of establishing that this Court has jurisdiction to hear his claims. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015).

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms:

> First, a facial attack on the complaint's allegations as to subject-matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject-matter jurisdiction depends. When reviewing a factual attack on subject-matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995); *see also Pueblo of Jemez*, 790 F.3d at 1148 n.4.

**II.     Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–80. Second, a court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, then the claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556

5

U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

### I.   Default Judgment

At ECF 10 is Plaintiff's proof of service on Defendant Judge Bonnie McLean. That filing indicates that a third person by name of "Tina F." personally delivered the summons as to "Bonnie McKlean" (as those papers spell Defendant's last name) at "Arapahoe county court house court room 14" on July 12, 2022. *Id*. Because Judge McLean did not answer the complaint or otherwise make an appearance in this lawsuit, Plaintiff moves for the entry of default judgment against her. Plaintiff asks for both an award of $6,666,666,666.66 and an injunction to compel Judge McLean to reopen the juvenile case and retry him "on the original grounds for [which his] son was removed from [the hospital]." ECF 18 at 2.

This Court need not decide whether Plaintiff's attempt to serve this Defendant fully complied with the requirements of Fed. R. Civ. P. 4. Incidentally, Plaintiff did not obtain an initial entry of default against this party from the Clerk of Court before seeking a default judgment. Regardless of the merits of Plaintiff's Motion, the doctrines of judicial immunity and abstention pose legal bars to his ability to litigate against her. Indeed, the very relief Plaintiff seeks necessitates consideration of those doctrines.

The Court recommends that Plaintiff's Motion for Default Judgment be denied. For the reasons explained below, the Court finds that the claims against Judge McLean instead should be dismissed.

## II.      Judicial Immunity

Courts have long extended immunity to judges acting in their official capacities. *Bradley v. Fisher*, 80 U.S. 335, 351 (1872). Recognizing that it is a "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon its own convictions, without apprehension of personal consequence," *id.* at 347, the Supreme Court held that "judges of courts of superior or general jurisdictions are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly," *id.* at 351.

"A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he had acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (quoting *Bradley*, 80 U.S. at 351). "The Supreme Court has recognized only two exceptions to this immunity from suit: (1) 'a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity;' and (2) 'a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction.'" *Hicks v. Blythe*, 105 F.3d 669 (10th Cir. 1997) (quoting *Mireles v. Waco*, 502 U.S. 9, 9 (1991)). "The factor determining whether an act by a judge is a 'judicial' one relates to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they deal with the judge in his judicial capacity." *Stump*, 435 U.S. at 360.

Plaintiff's allegations show that Judge McLean presided over the juvenile case at the trial level, and she resolved that proceeding in a way that was adverse to him. Plaintiff includes Judge McLean as a Defendant in his present challenge to that case's outcome. However, Judge McLean is absolutely immune for actions she took in her role as the presiding judge. *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 n.6 (10th Cir. 2008) (explaining how absolute judicial immunity shields a

7

judge from lawsuit whether it is for monetary damages or injunctive relief); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007).

Plaintiff himself acknowledges that Judge McLean has immunity protection. He objects that judicial immunity should not prevent her from being held accountable (ECF 1 at 16), but the Court sees no reason why absolute judicial immunity does not apply here. Nor does he lack recourse. As the Court explains below, the proper way to test the correctness of Judge McLean's decision was to appeal it to the appropriate state appellate court.

Judicial immunity extends to Defendant DePetro as well—although in its quasi-form—because he served in the underlying juvenile case as guardian ad litem. The law assigns a guardian ad litem the duty to act on behalf of a child's health, safety, and welfare, but the guardian ad litem answers to the court, to whom he or she makes recommendations about a child's best interests. *Colorado v. Gabriesheski*, 262 P.3d 653, 659 (Colo. 2011). In other words, the state juvenile court was Defendant DePetro's client. Plaintiff describes Defendant DePetro's role in those same terms. He notes how a guardian ad litem "is appointed by the court to represent the best interests of the child and remain impartial and is integral to the outcome of a child custody case." ECF 16.

The nature of Defendant DePetro's legal duties implicates immunity. Plaintiff alleges that he did not properly perform those duties, duties which Colorado law specifies at Colo. Rev. Stat. § 19-3-203. They are integral to judicial proceedings, and as such—and to enable guardians ad litem to serve the best interests of children—the law gives them absolute quasi-judicial immunity. In his Motion to Dismiss (ECF 12), Defendant DePetro cites extensive case law to illustrate the widespread recognition of how guardians ad litem are entitled to this protection. *See also Oosterhous v. Short*, 730 F. Supp. 1037, 1039 (D. Colo. 1990); *Wise v. Arapahoe County Dep't of Human Servs.*, No. 20-cv-01952-MEH, 2021 WL 981318, at *8 (D. Colo. 2021). None of Plaintiff's pleadings or responses in opposition to the Motion to Dismiss suggest that Defendant

DePetro acted outside that role. He does contend that Defendant DePetro should have known, given his professional experience and education, that his actions were unjust and unlawful, but that contention is irrelevant to whether he is entitled to quasi-judicial immunity.

The Court dismisses Plaintiff's claims of wrongdoing against both Defendant Judge McLean and DePetro with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for the failure to state a claim for relief in light of their absolute immunity from suit.

### III.     Abstention

Even if this Court were to assume that it has subject matter jurisdiction over Plaintiff's claims against these two Defendants, it still should abstain from hearing them. As a general matter, child dependency cases fall within the scope of important state court interests from which federal courts should abstain. *Morrow v. Winslow*, 94 F.3d 1386, 1393 (10th Cir. 1996) (emphasizing that "[i]t cannot be gainsaid that adoption and child custody proceedings are an especially delicate subject of state policy [and] that family relations are a traditional area of state concern"). Plaintiff does not demonstrate how the state juvenile court was an inadequate forum for raising all of the objections and arguments, including constitutional rights, that he asserts now. *Chapman v. Oklahoma*, 472 F.3d 747 (10th Cir. 2006) (abstaining from exercising federal subject matter jurisdiction over plaintiff's constitutional violation claims regarding a family court's rulings); *C.N. by Nedd v. Meinster*, No. 18-cv-00620-MSK, 2019 WL 200750, at *2–3 (D. Colo. Jan. 15, 2019) (declining to interfere with the state juvenile court proceeding). A federal court should assume that state procedures afforded an adequate remedy, and it is Plaintiff's burden to establish the contrary. *Winters v. Kansas Dep't of Soc. & Rehabilitation Servs.*, No. 10-2181-JAR-DJW, 2011 WL 166708, at *8 (D. Kan. Jan. 19, 2011). Very important interests were at stake for all involved including Plaintiff. *Arredondo v. Locklear*, 462 F.3d 1292, 1294 (10th Cir. 2006) (highlighting

those competing interests). For that reason, Plaintiff should have raised all relevant legal issues, claims, or defenses in the juvenile case to permit the state court to consider them.

Plaintiff's own description of the underlying events and the juvenile case shows that multiple actors participated in the determination whether the circumstances warranted the state's interference into his relationship with his son. That determination was made in the context of a court proceeding. Plaintiff disputes the correctness of the state juvenile court's ultimate decision, but he may not use this federal court as a super-appellate court. If the state juvenile court did make an error, the proper procedure was for him to appeal to the appropriate state appellate court.

The *Rooker-Feldman* abstention doctrine is at issue. That doctrine, drawn from *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), prevents a federal district court from hearing claims that either were at issue before the state court or that are inextricably intertwined with the state court's ruling. The doctrine applies if a favorable ruling in the federal lawsuit requires finding the state court's ruling to be wrong or would render it ineffectual. *Crone*, 2012 WL 5832438 at *2-3. In other words, Plaintiff may not appeal the state court's ruling to this federal district court. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233–34 (10th Cir. 2006); *Davis v. Schnurr*, 818 F. App'x 852 (10th Cir. 2020). To the extent Plaintiff is using this federal lawsuit to obtain relief from the state court's ruling, then his claims against the appearing Defendants are dismissed pursuant to Fed. R. Civ. P. 12(b)(1) without prejudice for lack of federal subject matter jurisdiction. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 668 n. 7 (10th Cir. 2020); *Crone*, 2012 WL 5832438 at *9.

## **CONCLUSION**

Plaintiff disagrees with the decision to restrict his parental rights and to interfere with his paternal relationship with his son. He brings suit against the various participants to that proceeding, one of whom, Defendant DePetro, has appeared in this lawsuit to assert judicial immunity protection. That doctrine, along with others that arise from the nature of this lawsuit, preclude this Court from hearing Plaintiff's claims against him. Those same principles also bar Plaintiff's pursuit of a default judgment against Judge McLean. Those two Defendants have immunity, and Plaintiff's attempt to litigate his disagreement with the juvenile case outcome in this federal court risks unwarranted hindrance of the state court's ability to decide child custody and placement.

Accordingly, the Court recommends that the Motion to Dismiss [filed August 25, 2022; ECF 12] be **granted** and that all claims against Defendant Nick DePetro be dismissed with prejudice. The Court recommends further that Plaintiff's Motion for Default Judgment [filed September 1, 2022; ECF 18] be **denied,** and instead, that all claims against Defendant Judge Bonnie McLean instead be dismissed with prejudice.[1]

The Court directs the Clerk of the Court to **reassign** this case to a District Judge pursuant to D.C. Colo. LCivR 40.1(a).

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.

Respectfully submitted this 12th day of September, 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge